McGrath, J.
*1092 {¶ 1} Defendant-appellant, Timothy S. Horton, a judge of the Tenth Appellate District, seeks to appeal his sentence after, on Horton's guilty plea, the Franklin County Court of Common Pleas convicted Horton of failure to file accurate campaign statements in violation of R.C. 3517.13(B). Because Horton waived his right to appeal his sentence, because Horton's sentence is not an abuse of discretion, and because the trial court's imposition of restitution does not constitute plain error, we affirm.
I. Factual and Procedural Background
{¶ 2} Plaintiff-appellee, State of Ohio, by and through a special prosecuting attorney, filed an information charging Horton with three counts of failure to file accurate statements in violation of R.C. 3517.13(B), misdemeanors of the first degree. The state asserted that Horton willfully and unlawfully reported expenditures to his campaign treasurer while knowing that they were unreasonable and excessive in amounts, thereby causing inaccurate campaign finance reports to be filed with the Ohio Secretary of State.
{¶ 3} According to the state, on or about March 4, 2014, Horton held a fundraiser at a restaurant where "only one person, aside from Horton and his campaign staff, were present at this event." The state asserted that the expenses from this fundraiser totaled $978.75, with Horton willfully reporting this expenditure to his campaign treasurer while knowing that it was excessive and unreasonable in amount. The state also asserted that in late March 2014 Horton learned that his opponent for a seat on the court of appeals was withdrawing his candidacy. And, according to the state, on or about March 24, 2014, which was near the time that Horton learned his opponent for an appellate judgeship was withdrawing his candidacy, Horton held a private campaign event consisting of a dinner at Hyde Park restaurant in downtown Columbus, Ohio, and he used funds of his campaign committee to pay for the food and beverages of attendees at a cost of $1,014.09. Additionally, according to the state, on or about July 23, 2014, Horton, who at that point was unopposed in his bid for the appellate judgeship, purchased cigars, which were intended to be made available to campaign supporters during campaign functions. This expenditure allegedly totaled $173.29.
{¶ 4} On February 2, 2017, Horton signed a petition to enter a guilty plea, representing to the trial court that he was mentally competent to make the petition, that he was not under the influence of drugs or alcohol, that he understood that a guilty plea "will result in my being found guilty," that "each expenditure involved the misuse of his campaign fund," and stating that "I am stipulating that, if the matter had gone to trial, the evidence would find me guilty beyond a reasonable doubt." The petition to enter a guilty plea contains counts, which are substantially similar to the alleged violations in the state's bill of information. In the petition to enter a guilty plea, Horton indicated that "for each of the counts I willfully committed the * * * violations of law." And in each of these counts Horton represented that he engaged in "willful" reporting of campaign expenditures while "knowing" that the expenditures were excessive and unreasonable in amount. (Petition to Enter Guilty Plea, at 4-5.) In this petition Horton informed the trial court that he understood that
*1093 the maximum direct criminal penalty as to count 1, 2, 3 are as follows: 180 days in local incarceration, a fine of up to $1,000 as to each count. This maximum penalty does not include possible collateral consequences.
Court costs, restitution, costs of confinement and/or other financial sanctions including fines, day fines, and reimbursement for the cost of any sanctions may also be imposed.
{¶ 5} In the petition to enter a guilty plea Horton also informed the trial court that he understood that the trial court had discretion whether to impose community control sanctions. And Horton represented to the court that "I know the judge may either sentence me today or refer my case for a pre-sentence investigation (PSI). I understand I have waived my right to appeal* * *."
{¶ 6} Additionally, in a document labeled Entry Of Guilty Plea, Horton indicated to the trial court that he understood that by pleading guilty he "waive[d] a number of important and substantial constitutional, statutory and procedural rights, which include * * * the right to appeal the verdict and rulings of the trial court made before or during trial, should those rulings or verdict be against my interests."
{¶ 7} On February 2, 2017, the trial court, through a visiting judge, conducted a plea hearing. At the hearing the special prosecuting attorney informed the trial court that the parties had reached an agreement wherein Horton had waived prosecution by indictment and agreed to proceed by a bill of information. (Tr., 2.) Horton's counsel informed the trial court that the petition to enter a guilty plea constituted the parties' plea agreement. (Tr., 5.) The trial court recognized the waiver of indictment and it agreed to proceed with the plea. (Tr., 5.) After the court granted the special prosecuting attorney's request to put "some additional technical points" of the plea agreement on the record, the special prosecuting attorney informed the court, "The defendant is waiving any statute of limitations issues, his right to appeal his conviction, his right to challenge his conviction collaterally, and his right to have the matter heard by the Ohio Election Commission prior to prosecution, although that actually has been done. He admits that each expense involved the misuse of campaign funds. * * *." (Tr., 8-9.) After the special prosecuting attorney made his representation, defense counsel stated: "That is correct, Your Honor." (Tr., 9.) The trial court later inquired of Horton, stating:
THE COURT: All of the rights that were just stated on the record by Mr. Donahue [special prosecuting attorney] that you are giving up and waiving, including your right of appeal, * * * are you in agreement that you are agreeing to voluntarily give up those rights?
THE DEFENDANT: I am, Your Honor.
THE COURT: Again, the court finds the waiver knowingly, intelligently, and voluntarily entered, especially in light of the signing of the written plea agreement. * * *.
(Tr., 9-10.) Thereafter the trial court reviewed with Horton the rights he was waiving by entering a guilty plea as well as the offenses contained in the bill of information. The court accepted Horton's guilty pleas, found that Horton knowingly, intelligently, and voluntarily entered his guilty pleas, and the trial court made a finding of guilt. (Tr., 13.) Because the court wished to know more about Horton and the circumstances of the matter before it, the trial court ordered a presentence investigation and set a date for sentencing. (Tr., 13.)
{¶ 8} On March 16, 2017, the trial court conducted a sentencing hearing, affording opportunities to Horton to address the *1094 court, to the parties' counsel to present arguments, and to certain judges of the Tenth District Court of Appeals to speak in support of Horton. At the hearing, the court addressed Horton, noting:
* * * All right. When you entered a guilty plea to the three misdemeanor charges, here is in essence what the bill of information said, the mens rea and the language is similar, identical, in fact, with the exception of the particular fund raiser. That on or about whatever particular date in Franklin County, the defendant, Timothy S. Horton, willfully and unlawfully did report an expenditure to defendant's campaign treasurer while knowing that it was unreasonable and excessive in amount, and thus caused inaccurate campaign finance report to be filed.
So what you pled guilty to was, that knowing it was unreasonable and excessive.
Now, when I read your statement in the presentence investigation, that is not what you say. You say in the-I am going to read it here, just so we have a record here, that is not what you say at all.
Your statement to the probation department was-the person who prepared the PSI-the State of Ohio and I stipulated to the relevant facts in this case. They are contained in the bill of information. Additionally, I would add by information, that the accurate-inaccurate statements were caused by three expenditures that were legitimate in purpose but unreasonable by virtue of being excessive in amount. The three excessive payments were caused by a lapse in judgment and a failure to pay appropriate attention, for which I take full responsibility.
So it is like you are gilding the lily here, from my perspective, from the court's perspective. You are saying they were excessive, but you are saying that to use campaign funds that are given to you by voters, by citizens, by attorneys, that it is okay, it is legitimate, it is reasonable to throw a party because you don't have any opposition and spend over a thousand bucks at Hyde Park. Is that what you are saying?
People work hard for their money. They gave you this money-just hold on. I am asking him, not you. They work hard for their money, and they give money to a campaign because they want that person to prevail in the campaign, to win the election, and so you take that money, that hard-earned money of the voters, the citizens, and you throw a party celebrating that you don't have an opponent, and you think that is a reasonable, legitimate expense?
(Tr., 37-39.)
{¶ 9} Before announcing a sentence in court, the trial court noted that "there is a dearth of decisions dealing with judges who do what you did, and there is a reason that there is a dearth of decisions, because judges don't do this kind of stuff, and it is not just you and your wife and your children who suffer the humiliation of all of this, but you denigrate and demean all judges everywhere, because you do this conduct, then it sets an example of what the judiciary is or what they do, and I have also taken that into consideration." (Tr., 43.)
{¶ 10} The court also noted that "there are many good things that have been said on your behalf. I don't question any of those. And then the court has to balance those against what happened here, and the fact, again, in my opinion, the court's opinion, you were very callous with the use of these campaign funds. You just didn't care, and you partied on it." (Tr., 44.) The court further stated, "I am also going to order that you make-instead of paying back your campaign fund the rest of this money, *1095 I am going to order that you pay $2,065 to an area food bank or someone that serves poor people food, who don't eat at Hyde Park, who don't spend money frivolously. And that is part of your penalty." (Tr., 47.) Horton did not object to the court's imposition of restitution. Besides announcing an intention to order restitution, the court also announced other parts of Horton's sentence, including an intention to impose a $1,000 fine. (Tr., 46-49.)
{¶ 11} Thereafter, the trial court issued its written judgment of conviction noting Horton's guilty pleas and stating:
The Court has considered all matters required by Sections 2929.11 and 2929.22 of the Ohio Revised Code, and it is the sentence of the Court that the Defendant serve 6 months to each count to run concurrently at the Franklin County Corrections Center. Sentence suspended for 1 year of Standard Reporting Probation with the following conditions: Defendant is to be supervised by a Probation Officer that does not know the defendant. Defendant to serve 10 days consecutively in the Franklin County Corrections Center. The defendant is to report to FCCC by noon on March 24, 2017. The defendant is to undergo a Drug/Alcohol assessment and complete any follow up treatment. The defendant is to pay restitution to the Mid-Ohio Food Bank in the amount of $2,065.00. The defendant is to complete 100 hours of Community Service. The defendant is to attend at least (1) AA meeting per week and provide Verification. The defendant is to continue to stay involved in the Ohio Lawyers Assistant Program. The defendant is to pay court costs and the supervision fee.
The Court has factually found that the defendant is to receive Zero (0) days of jail credit.
(Emphasis sic.) (Entry dated March 16, 2017.)
{¶ 12} Horton represents to this court that he has served ten consecutive days at the Franklin County Corrections Center, that he remains involved in the Ohio Lawyers Assistance Program, that he attends at least one AA meeting per week, that he has met with a community service organization, that he has logged over fifty hours of community service, and that he has paid his supervision fee. (Appellant's Brief, at 6.) Horton further represents that he "has paid approximately $800 towards restitution to remain in compliance with the terms of his probation, but has moved the Court of Common Pleas to stay the remainder of his sentence so that he may pursue the present appeal challenging, in part, the trial court's arbitrary order of restitution." (Appellant's Brief, at 6.)
{¶ 13} Horton also asserts: "As part of Appellant's guilty plea, Appellant agreed to an appellate waiver. That waiver, however, only reached Appellant's 'right to appeal his convictions.' Guilty Plea, p.4. Appellant did not waive his right to appeal his resulting sentence-which is the subject of this appeal and the present assignments of error." (Appellant's Brief, at 4, fn. 1.) The state contends, however, that Horton "tries to thread the needle by claiming he is only challenging his sentence and not his 'conviction.' Such a distinction is hogwash. In Ohio a conviction is made up of a plea of guilty or a finding of guilty and a sentence." (Appellee's Brief, at 13-14.)
{¶ 14} Thus, in addition to issues raised by Horton's assignments of error, the parties dispute what constitutes a judgment of conviction in a criminal case and whether a sentence may be the subject of an appeal, apart from the conviction. And the parties dispute whether Horton waived a right to *1096 appeal his sentence under the facts of this case.
{¶ 15} Based on our review of Ohio law, we conclude that a judgment of conviction in a criminal case includes the fact of conviction and a sentence. Additionally, we conclude that, as part of his plea agreement with the state, Horton waived his right to appeal without limiting this waiver or qualifying that this waiver only reached a right to appeal his convictions.
II. Under Ohio law a judgment of conviction includes the fact of conviction and a sentence. By his plea agreement, Horton waived a right to appeal without qualifying that he retained a right to appeal his sentence.
{¶ 16} Horton asserts that his waiver in this case only reached his right to appeal his conviction-not the sentence imposed by the trial court. Except for a reference to the written guilty plea form in this case, Horton does not support this assertion with citation to other relevant legal authority. Notwithstanding Horton's contention, our review of relevant legal authority, as well as the entire record, compels us to conclude that Horton's assertion lacks merit.
{¶ 17} Here, neither Horton nor the state appears to dispute that under Ohio law a right to appeal is created by statute, see R.C. 2953.02 ; State v. Butts , 112 Ohio App. 3d 683, 686, 679 N.E.2d 1170 (8th Dist.1996), and that this statutorily-created right of appeal may be waived. See Butts at 686, 679 N.E.2d 1170, citing United States v. Navarro-Botello , 912 F.2d 318 (9th Cir.1990) ; United States v. Wiggins , 905 F.2d 51 (4th Cir.1990) ("Courts which have examined this issue have reasoned that since a constitutional right may be waived, the statutorily-created right to appeal may also be waived"). Neither does Horton or the state seem to dispute that in this appellate district a waiver "is defined as 'a voluntary relinquishment of a known right, with the intent to do so with full knowledge of all the facts.' " Miller v. Lindsay-Green, Inc. , 10th Dist. Franklin No. 04AP-848, 2005-Ohio-6366, 2005 WL 3220215, ¶ 70, quoting RFC Capital Corp. v. EarthLink, Inc. , Franklin App. No. 03AP-735, 2004-Ohio-7046, 2004 WL 2980402, at ¶ 58, quoting Newsom v. Newsom , Franklin App. No. 01AP-686, 2002 WL 433578. See United States v. Olano , 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), quoting Johnson v. Zerbst , 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (waiver "is the 'intentional relinquishment or abandonment of a known right' ").
{¶ 18} Rather, the parties initially dispute what constitutes a judgment of conviction in a criminal case under Ohio law and whether a sentence may be the subject of an appeal, apart from the conviction. Based on our review of Ohio law, we conclude that a judgment of conviction in a criminal case includes the fact of conviction and a sentence. And, according to Ohio law, a judgment of conviction in a criminal case constitutes a final order or judgment that may be the subject of an appeal.
{¶ 19} First, R.C. 2953.02 creates a right to appeal from a judgment or final order in a criminal case, stating: "In a capital case in which a sentence of death is imposed for an offense committed before January 1, 1995, and in any other criminal case, including a conviction for the violation of an ordinance of a municipal corporation, the judgment or final order of a court of record inferior to the court of appeals may be reviewed in the court of appeals. * * *." (Emphasis added.) Notably, the statute creating a right to appeal uses the term "judgment or final order"-not "portion of a judgment or final order."
*1097 {¶ 20} Second, pursuant to Crim.R. 32(C), "[a] judgment of conviction shall set forth the fact of conviction and the sentence." (Emphasis added.) The staff notes to Crim.R. 32(C), explaining the July 1, 2013 amendment to the rule, states: " Rule 32(C) sets forth the four essential elements required for a judgment of conviction as defined by the Supreme Court of Ohio. See State v. Lester , [130 Ohio St.3d 303] 2011-Ohio-5204 [958 N.E.2d 142]." In Lester , 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus, the Ohio Supreme Court states: "A judgment of conviction is a final order subject to appeal under R.C. 2505.02 when it sets forth (1) the fact of the conviction , (2) the sentence , (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk. ( Crim.R. 32(C), explained; State v. Baker , 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, modified.)." (Emphasis added.) Thus, as established by Lester , under Ohio law a judgment of conviction includes both the fact of conviction and the sentence.
{¶ 21} Moreover, the framework of the Ohio Rules of Criminal Procedure supports a conclusion that a judgment of conviction includes both the fact of conviction and sentence. Crim.R. 32.1 (withdrawal of guilty plea), which is the rule after Crim.R. 32, provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed ; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." (Emphasis added.) Crim.R. 32.1 implies that a judgment of conviction includes both the fact of conviction and a sentence because it allows a defendant to withdraw a plea of guilty or no contest only before sentence is imposed , but after a defendant pleads guilty or no contest and a judgment of conviction is issued (which includes the fact of conviction along with a sentence), see Lester , supra , a trial court may set aside the judgment of conviction and permit a defendant to withdraw a plea of guilty or no contest to correct manifest injustice. Crim.R. 32.1 thus bolsters the view that a judgment of conviction includes both the fact of conviction and the sentence.
{¶ 22} Third, pursuant to R.C. 2505.03(A), "Every final order , judgment , or decree of a court and, when provided by law, the final order of any administrative officer, agency, board, department, tribunal, commission, or other instrumentality may be reviewed on appeal by a court of common pleas, a court of appeals, or the supreme court, whichever has jurisdiction." (Emphasis added.) Notably, R.C. 2505.03(A) does not state: "Every final order, judgment, or decree of a court or portion thereof and, when provided by law, the final order or portion thereof of any administrative officer, agency, board, department, tribunal, commission, or other instrumentality may be reviewed on appeal by a court of common pleas, a court of appeals, or the supreme court, whichever has jurisdiction." And, according to R.C. 2505.03(C), an "appeal of a final order , judgment , or decree of a court shall be governed by the Rules of Appellate Procedure or by the Rules of Practice of the Supreme Court, whichever are applicable, and, to the extent not in conflict with those rules, this chapter." (Emphasis added.) R.C. 25050.03(C) does not use language indicating that an appeal of portions of a final order, judgment, or decree of a court shall be governed by the Ohio Rules of Appellate Procedure or by the Rules of Practice of the Supreme Court of Ohio. See App.R. 4(D) (definition of "entry" or "entered") ("As used in this rule, 'entry' or 'entered' means when a judgment or order is entered under Civ.R. 58(A) or Crim.R. 32(C)"); S.Ct.Prac.R. 7.01(A)(1)(a)(i) ("To perfect a jurisdictional appeal from a court of appeals to the Supreme Court as defined *1098 by S.Ct.Prac.R. 5.02(A), the appellant shall file a notice of appeal in the Supreme Court within forty-five days from the entry of the judgment being appealed * * *").
{¶ 23} Thus, in accordance with Ohio law in a criminal case a judgment of conviction (which includes the fact of conviction and the sentence) is the proper subject of an appeal.
{¶ 24} Besides disputing what constitutes a judgment of conviction under Ohio law and whether a sentence may be the subject of an appeal, the parties dispute whether Horton waived a right to appeal his sentence in this case. We conclude that, as part of his plea agreement with the state, Horton waived his right to appeal-without limiting this waiver or qualifying that this waiver only reached a right to appeal his convictions. We also conclude that Horton waived his right to appeal with an intent to do so with full knowledge of all the facts.
{¶ 25} First, in his petition to enter a guilty plea, which served to document the plea agreement between the state and Horton, Horton indicated-without any qualification -that he understood that he waived his right to appeal his convictions and his right to appeal, stating: "The defendant also waives and will execute a waiver statute of limitations, his right to appeal his convictions , his right to challenge his convictions collaterally, any right to have the matter heard by the Ohio Elections Committee before prosecution, and admit that each expenditure involved the misuse of his campaign fund. * * * I know the judge may either sentence me today or refer my case for a pre-sentence investigation (PSI). I understand I have waived my right to appeal ; I understand the possible consequences of a conviction upon me if I am not a U.S. citizen." (Emphasis added.) (Petition to Enter Guilty Plea, 4.) The petition to enter a guilty plea makes no mention that Horton reserved a right to appeal his sentence, while waiving the right to appeal the fact of his conviction.
{¶ 26} This court has recognized that a plea agreement "is a contract between the state and a defendant and is subject to contract law standards." Ankrom v. Hageman , 10th Dist. Franklin Nos. 04AP-984, 04AP-985, 04AP-986, 04AP-987, 04AP-988, 04AP-989, 04AP-990, 04AP-991, 04AP-993, 04AP-994, 04AP-995, 04AP-996, 04AP-997, 04AP- 998, 04AP-999, 04AP-1001, 04AP-1002, 04AP-1003, 04AP-1004, 04AP-1005, 04AP-1006, 04AP-1007, 04AP-1008, 04AP-1009, 2005-Ohio-1546, 2005 WL 737833, ¶ 28. And in State v. Bethel , 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, ¶ 50, the Ohio Supreme Court also recognized that contract law standards apply to plea agreements, stating: "Principles of contract law are generally applicable to the interpretation and enforcement of plea agreements. See, generally, United States v. Wells (C.A.6, 2000), 211 F.3d 988, 995." Additionally, the Ohio Supreme Court has cautioned that "courts should not rewrite contracts." N. Buckeye Edn. Council Group Health Benefits Plan v. Lawson , 103 Ohio St.3d 188, 2004-Ohio-4886, 814 N.E.2d 1210, ¶ 20. Lawson notes: "As stated in Ervin [v. Garner] , 'Cases of contractual interpretation should not be decided on the basis of what is "just" or equitable. This concept is applicable even where a party has made a bad bargain, contracted away all his rights, and has been left in the position of doing the work while another may benefit from the work. Where various written documents exist, it is the court's duty to interpret their meaning, and reach a decision by using the usual tools of contractual interpretation (e.g., the written documents, the intent of the parties, and the acts of the parties) and not by a determination of what is fair, equitable, or just.'
*1099 25 Ohio St.2d [231] at 239-240, 54 O.O.2d 361, 267 N.E.2d 769." Lawson at ¶ 20.
{¶ 27} Here, in his petition to enter a guilty plea Horton represented, without any qualification, "I understand I have waived my right to appeal." The plain contractual language of the parties' agreement states that Horton waived a right to appeal. We find nothing in this language to support a notion that this waiver only reached Horton's "right to appeal his convictions," as Horton now urges.
{¶ 28} Second, during the plea hearing, Horton agreed that he was "giving up and waiving * * [a] right to appeal," without qualifying that he was reserving a right to appeal any sentence that the trial court may impose.
{¶ 29} Third, in his written plea of guilty, Horton informed the trial court that he understood that by pleading guilty he "waive[d] a number of important and substantial constitutional, statutory and procedural rights, which include * * * the right to appeal the verdict and rulings of the trial court made before or during trial, should those rulings or verdict be against my interests." Our review of this document does not reveal any language indicating that a right to appeal the trial court's sentence is excepted from this waiver of the right to appeal a verdict and rulings. Indeed, language in the written guilty-plea entry indicates that Horton placed no reservations of any kind upon the judgment of the trial court with respect to punishment. Notably, Horton stated: "I hereby assert that no person has threatened me, promised me leniency, or any other way coerced or induced me to pled [sic] 'Guilty' as indicated above; my decision to plead 'Guilty', thereby placing myself completely and without reservation of any kind upon the mercy of the Court with respect to punishment , represents the free and voluntary exercise of my own will and best judg[ ]ment." (Emphasis added.) The language "without reservation of any kind" and "with respect to punishment" militates against Horton's contention that he retained a right to appeal his sentence.
{¶ 30} We determine that the evidence squarely establishes that Horton voluntarily relinquished his right to appeal his conviction and his sentence, with an intent to do so with full knowledge of all the facts. Moreover, his unqualified waiver was an explicit part of his plea agreement with the state.
{¶ 31} Consequently, because in this appeal Horton seeks to challenge his sentence-a right that Horton waived-it follows that Horton's present appeal is tantamount to a legal nullity. See Natl. Bank of Columbus v. Tennessee C., I. & R. Co. , 62 Ohio St. 564, 581, 57 N.E. 450 (1900) (stating that null is defined as of no legal force or effect; void).
{¶ 32} Nonetheless, in the interest of justice, we shall examine Horton's assignments of error.
III. Assignments of Error
{¶ 33} Horton presents two assignments of error for our review:
Assignment of Error No. 1: The trial court abused its discretion by imposing a sentence that is disproportionate, contrary to law, and excessive in violation of R.C. 2929.21, R.C. 2929.22, and the Due Process and Equal Protection Clauses of the Ohio and United States Constitutions.
Assignment of Error No. 2: The trial court committed plain error by directing Appellant to pay restitution to a third-party non victim in violation of R.C. 2929.28(A)(1).
A. Assignment of Error No. 1
{¶ 34} By his first assignment of error, Horton asserts that the trial court's sentence *1100 violates R.C. 2929.21, R.C. 2929.22, and certain constitutional protections afforded by federal and state constitutions. In response, the state contends that Horton's sentence is not contrary to law, that Horton's sentence on each count is within the statutory range for the offense, that Horton is barred from bringing this appeal by his plea bargain, and that Horton voluntarily served his jail sentence, which renders moot his appeal.
{¶ 35} The state's claim that Horton's appeal is moot is not persuasive. In State v. Golston , 71 Ohio St.3d 224, 226, 643 N.E.2d 109 (1994), the Ohio Supreme Court stated: "This court has held that where a criminal defendant, convicted of a misdemeanor , voluntarily satisfies the judgment imposed upon him or her for that offense, an appeal from the conviction is moot unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral legal disability or loss of civil rights stemming from that conviction. See State v. Wilson (1975), 41 Ohio St.2d 236, 70 O.O.2d 431, 325 N.E.2d 236, and State v. Berndt (1987), 29 Ohio St.3d 3, 29 OBR 173, 504 N.E.2d 712." (Emphasis sic.) Here, according to Horton's representations, he has satisfied portions of the trial court's sentence, but he has not satisfied the entire sentence imposed by the trial court's judgment of conviction. Because Horton has not satisfied the trial court's judgment of conviction, it follows that his appeal is not moot.
{¶ 36} Horton's challenge to his misdemeanor sentence is subject to an abuse-of-discretion standard of review. In State v. Blankenship , 192 Ohio App.3d 639, 2011-Ohio-1601, 949 N.E.2d 1087, ¶ 5 (10th Dist.), this court stated, "Generally, an appellate court will not overturn the sentence imposed on a misdemeanor offender absent an abuse of discretion by the trial court." And in State v. Adams , 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144 (1980), the Ohio Supreme Court stated that the term abuse-of-discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Steiner v. Custer (1940), 137 Ohio St. 448 [31 N.E.2d 855] ; Conner v. Conner (1959), 170 Ohio St. 85 [162 N.E.2d 852] ; Chester Township v. Geauga Co. Budget Comm. (1976), 48 Ohio St. 2d 372 [358 N.E.2d 610]." However, "where a trial court's order is based on an erroneous standard or a misconstruction of the law, it is not appropriate for a reviewing court to use an abuse of discretion standard." Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership , 78 Ohio App.3d 340, 346, 604 N.E.2d 808 (2d Dist.1992). Thus, at issue is whether the trial court's sentence is lawful or whether the trial court's attitude was unreasonable, arbitrary, or unconscionable when it imposed its sentence on Horton.
{¶ 37} R.C. 2929.21 et seq. governs penalties for misdemeanor offenses. R.C. 2929.21 establishes the overriding purposes of misdemeanor sentencing, stating at R.C. 2929.21(A) : "The overriding purposes of misdemeanor sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the impact of the offense upon the victim and the need for changing the offender's behavior, rehabilitating the offender, and making restitution to the victim of the offense, the public, or the victim and the public." R.C. 2929.21(B) provides:
A sentence imposed for a misdemeanor * * * shall be reasonably calculated to achieve the two overriding purposes of misdemeanor sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent *1101 with sentences imposed for similar offenses committed by similar offenders.
And, according to R.C. 2929.21(C), a court that imposes a sentence upon an offender for a misdemeanor "shall not base the sentence upon the race, ethnic background, gender, or religion of the offender."
{¶ 38} R.C. 2929.22 sets forth considerations in imposing a sentence for a misdemeanor. R.C. 2929.22(A) provides:
Unless a mandatory jail term is required to be imposed by division (G) of section 1547.99, division (B) of section 4510.14, division (G) of section 4511.19 of the Revised Code, or any other provision of the Revised Code a court that imposes a sentence under this chapter upon an offender for a misdemeanor or minor misdemeanor has discretion to determine the most effective way to achieve the purposes and principles of sentencing set forth in section 2929.21 of the Revised Code.
Unless a specific sanction is required to be imposed or is precluded from being imposed by the section setting forth an offense or the penalty for an offense or by any provision of sections 2929.23 to 2929.28 of the Revised Code, a court that imposes a sentence upon an offender for a misdemeanor may impose on the offender any sanction or combination of sanctions under sections 2929.24 to 2929.28 of the Revised Code. The court shall not impose a sentence that imposes an unnecessary burden on local government resources.
R.C. 2929.22(B) establishes factors a trial court is required to consider in determining the appropriate sentence for a misdemeanor. See R.C. 2929.22(B)(1)-(2). R.C. 2929.22(C) generally requires a trial court to consider the appropriateness of imposing a community control sanction or a combination of community control sanctions before imposing a jail term. And R.C. 2929.22(D)(1) generally requires a trial court to consider relevant oral or written statements made by a victim, a defendant, a defense attorney, or the prosecuting attorney. Additionally, R.C. 2929.22(D)(2) generally requires a trial court to notify a victim of an offense of a right to file an application for an award of reparations.
{¶ 39} R.C. 2929.24 establishes definite jail terms for misdemeanors. See R.C. 2929.24(A)(1) (a definite jail term for a misdemeanor of the first degree is required to be "not more than one hundred eighty days"). And R.C. 2929.28 establishes financial sanctions. See R.C. 2929.28(A) (authorizing a trial court to order restitution); R.C. 2929.28(A)(2)(a) (authorizing a trial court to impose a fine of "not more than one thousand dollars" for a misdemeanor of the first degree).
{¶ 40} Based on our review, we determine that the trial court's sentence does not constitute an abuse of discretion because (1) the trial court's sentence is supported by a sound reasoning process, (2) the trial court's sentence is governed by fixed rules or standards, and (3) the trial court's sentence is not irrational.
{¶ 41} First, at the sentencing hearing, the trial court stated that it had "reviewed the purposes and principles of sentencing pursuant to Revised Code Section 2921 and 2922, which set forth the principles and purposes of misdemeanor sentencing." (Tr., 43.) In accordance with R.C. 2929.21(A), in imposing its sentence, the trial court thus was required to protect the public from future crimes by Horton and to punish Horton. And to achieve the purposes of misdemeanor sentencing, in accordance with R.C. 2929.21(A) the trial court was required to consider the impact of Horton's offense upon the victim, the need for changing Horton's behavior, rehabilitating Horton, and "making restitution to * * * the public, or the victim and the *1102 public." R.C. 2929.21(A). At the sentencing hearing, the trial court addressed the need for changing Horton's behavior by highlighting the seriousness of Horton's crimes, noting that his crimes "set[ ] an example of what the judiciary is or what they do." (Tr., 43.) And the trial court indicated that it was troubled by Horton's statements to the person who prepared the presentence investigation report, which the trial court took to be at odds with his guilty plea language, as evidenced by the trial court's statements: "So what you pled guilty to was, that knowing it was unreasonable and excessive. Now, when I read your statement in the presentence investigation, that is not what you say. * * * So it is like you are gilding the lily here, from my perspective, from the court's perspective." (Tr., 38-39.) Additionally, the trial court appears to have been troubled by statements of witnesses that reflected Horton's expressed intent to misspend and misuse his campaign funds. At the sentencing hearing, after the trial court confirmed that the parties' counsel had seen the presentence investigation report, the special prosecuting attorney informed the trial court:
The investigation, Your Honor, showed two quotes related to this that I think sum up the defendant's attitude perfectly. One was from a witness interviewed by the Ohio Auditor of State's office. Essentially, the defendant had told her that he was raising these funds to spend them during the summertime when he was unopposed, he wanted to have fun during that summer. Another campaign professional who indicated she was very concerned about the defendant's activities and essentially that the defendant didn't feel that the rules applied to him.
And, unfortunately, that sums up, these two things sum up, apparently, the defendant's attitude that the rules didn't apply to him because he had reached a certain station in life.
(Tr., 3-4.) To the extent that the special prosecuting attorney's representations influenced the trial court's sentencing, the trial court had discretion to consider these representations in fashioning Horton's sentence. See R.C. 2929.22(B)(2) (permitting a court to consider any other factors that are relevant to achieving the purposes and principles of sentencing set forth in R.C. 2929.21 ).
{¶ 42} Second, Horton's ten-day jail sentence is lawful because it is within the statutory range. See R.C. 2929.24(A)(1) (permitting a definite jail term of not more than one hundred eighty days for a misdemeanor of the first degree). The definite jail term imposed by the trial court is far less than the statutory maximum that the trial court could have imposed. And, given the trial court's highlighting of a need to change Horton's behavior, a ten-day jail term under the circumstances of this case is not an abuse of discretion.
{¶ 43} Third, the trial court's imposition of restitution with an order to pay $2,065.00 to the Mid-Ohio Food Bank is consistent with the overall purposes of misdemeanor sentencing as set forth in R.C. 2929.21(A) ("To achieve those purposes, the sentencing court shall consider * * * making restitution to the victim of the offense, the public, or the victim and the public"). Because trial court's order of restitution is based on some sound reasoning process, we find that it is not unreasonable. Neither do we find that the trial court's order of restitution is arbitrary, or unconscionable. See Dayton ex rel. Scandrick v. McGee , 67 Ohio St.2d 356, 359, 423 N.E.2d 1095 (1981) (" 'Arbitrary' means 'without adequate determining principle; * * * not governed by any fixed rules or standard.' Black's Law Dictionary (5 Ed.). 'Unreasonable' means 'irrational.' Id."). See also *1103 AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp. , 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990) ("It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo , would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result").
{¶ 44} Fourth, under the circumstances of this case, the trial court's sentence is not inconsistent with sentences imposed for similar offenses committed by similar offenders. See R.C. 2929.21(B) (requiring a sentence imposed for a misdemeanor that is subject to R.C. 2929.21(A) to be consistent with sentences imposed for similar offenses committed by similar offenders). Notably, at the sentencing hearing the trial court stated: "[T]here is a dearth of decisions dealing with judges who do what you did, and there is a dearth of decisions, because judges don't do this kind of stuff." (Tr., 43.) Also, according to our review, the trial court gave consideration to statutory sentencing factors and guidelines contained in R.C. 2929.21 and 2929.22. See State v. Saur , 10th Dist. Franklin No. 10AP-1195, 2011-Ohio-6662, 2011 WL 6826851, ¶ 38 ("a defendant claiming inconsistent sentencing must show the trial court failed to properly consider the statutory sentencing factors and guidelines in R.C. 2929.11 and 2929.12. [ State v. Hayes , 10th Dist. No. 08AP-233, 2009-Ohio-1100, 2009 WL 638475] at ¶ 10 ; [ State v. Holloman , 10th Dist. No. 07AP-875, 2008-Ohio-2650, 2008 WL 2250226] at ¶ 19").
{¶ 45} Fifth, the trial court's imposition of (1) supervision by a probation officer who did not know Horton, (2) an alcohol and drug assessment with a requirement to complete any follow-up treatment, (3) a requirement to attend at least one alcoholics anonymous meeting per week and provide verification, (4) a requirement for continued involvement in the Ohio Lawyers Assistance Program, and (5) community service is consistent with R.C. 2929.21(A)'s requirement for a court to consider the need for changing an offender's behavior and rehabilitating an offender.
{¶ 46} Sixth, the trial court's decision to impose restitution, court costs, and a supervision fee is consistent with the discretion afforded to a sentencing court under R.C. 2929.28(A). See R.C. 2929.28(A) (granting discretion to a court to impose one or more financial sanctions in misdemeanor cases); R.C. 2929.28(A)(1) (authorizing a court to impose restitution); R.C. 2929.28(A)(2) (authorizing a court to impose fines); R.C. 2929.28(A)(3) (authorizing a court to impose reimbursement of any or all costs of sanctions incurred by the government).
{¶ 47} Finally, we also conclude that Horton's sentence does not contravene fundamental fairness afforded by the Due Process Clauses of the Ohio and United States Constitutions. See State v. Aalim , 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 22, quoting Lassiter v. Durham Cty. Dept. of Social Servs. , 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) ("As the United States Supreme Court has observed, 'For all its consequence, "due process" has never been, and perhaps can never be, precisely defined' "); Aalim at ¶ 22 (" 'Applying the Due Process Clause is * * * an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.' Lassiter at 24-25, 101 S.Ct. 2153. Accord *1104 In re D.S. , 146 Ohio St.3d 182, 2016-Ohio-1027, 54 N.E.3d 1184, ¶ 28 (what process satisfies Article I, Section 16 of the Ohio Constitution"depends on considerations of fundamental fairness in a particular situation"), citing In re C.S. , 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 80, and In re C.P. , 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 71"). Here, according to the written guilty-plea entry, Horton placed himself completely and without reservation of any kind upon the mercy of the trial court with respect to punishment. Horton's claim of a due-process violation is not persuasive.
{¶ 48} We also conclude that Horton's sentence does not constitute an inequity that contravenes principles of equal protection afforded under the federal and state constitutions. See Bd. of Edn. v. Walter , 58 Ohio St.2d 368, 373, 390 N.E.2d 813 (1979) ("this court has consistently applied federal guidelines in construing the Ohio Constitution's Equal Protection and Benefit Clause. Porter v. Oberlin (1965), 1 Ohio St. 2d 143, 205 N.E.2d 363 ; State, ex rel. Struble, v. Davis (1937), 132 Ohio St. 555, 9 N.E.2d 684. Simply stated, the test is that unequal treatment of classes of persons by a state is valid only if the state can show that a rational basis exists for the inequality, unless the discrimination impairs the exercise of a fundamental right or establishes a suspect classification"). In this case, at the time of the offenses, Horton was a judge. See Appellant's Brief, Statement of Facts ("Since 2006, Appellant has served as a judge in Franklin County, first in the Franklin County Court of Common Pleas and subsequently on the Tenth District Court of Appeals"). Under the Ohio Code of Judicial Conduct, a judge should avoid impropriety and the appearance of impropriety in his or her professional life and personal life, and a judge should expect to be the subject of public scrutiny that might be viewed as burdensome if applied to other citizens. See Preamble, Ohio Code of Judicial Conduct ("[2] Judges should maintain the dignity of judicial office at all times and avoid both impropriety and the appearance of impropriety in their professional and personal lives. They should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence."); Comment 2, Jud.Cond.R. 1.2 ("A judge should expect to be the subject of public scrutiny that might be viewed as burdensome if applied to other citizens, and must accept the restrictions imposed by the code."). Thus, Horton's status as a judge provides a rational basis for any purported unequal treatment by the trial court in its sentencing. Horton's claim of an equal-protection violation is not persuasive.
{¶ 49} Accordingly, for reasons set forth above, we deny Horton's first assignment of error.
B. Assignment of Error No. 2
{¶ 50} By Horton's second assignment of error, Horton urges that the trial court committed plain error by directing him to pay restitution to a third-party non victim, i.e., the Mid-Ohio Food Bank, in violation of R.C. 2929.28(A)(1). In response, the state asserts that, although the trial court's order was "unconventional," the trial court set forth reasons in support of the decision to order the payment of restitution to the food bank.
{¶ 51} We conclude that in this case the trial court's award of restitution to the Mid-Ohio Food Bank is a deviation from a legal rule. We do not conclude, however, that it constitutes plain error, as Horton contends.
{¶ 52} Crim.R. 52(B) governs plain error, providing: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." (Emphasis added.) Thus, according to the plain language of *1105 Crim.R. 52(B), whether to notice plain error is discretionary and we need not engage in a plain-error analysis.
{¶ 53} The Ohio Supreme Court has stated that the "burden of demonstrating plain error is on the party asserting it." State v. Payne , 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17. In State v. Barnes , 94 Ohio St.3d 21, 27-28, 759 N.E.2d 1240 (2002), the Ohio Supreme Court discussed plain error under Crim.R. 52(B), stating:
Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial. * * *.
Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court "may" notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." * * *.
And in State v. Hill , 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001), the Ohio Supreme Court stated: "As part of the inquiry into whether plain error occurred, a reviewing court 'must examine the error asserted by the [defendant] in light of all of the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error had not occurred.' State v. Slagle (1992), 65 Ohio St.3d 597, 605, 605 N.E.2d 916, 925. Reversal is warranted only if the outcome of the trial clearly would have been different absent the error."
{¶ 54} We find that Horton has shown that the trial court's award of restitution to the Mid-Ohio Food Bank is a deviation from a legal rule based on this appellate district's case law. In State v. Angus , 10th Dist. Franklin No. 05AP-1054, 2006-Ohio-4455, 2006 WL 2474512, ¶ 32, Larry Angus, Jr.'s counsel failed in municipal court to contest the court's order to pay restitution to the Humane Society. On appeal, Angus took issue with the restitution order, asserting: "The trial court erred in ordering Appellant to pay $3,000 in restitution payments to the Humane Society." Angus at ¶ 12. The Angus court found merit in Angus's challenge, observing:
While R.C. 2929.21(A) directs the court to consider those factors [i.e., the impact of making restitution to the victim of the offense, the public, or the victim and the public], that section does not grant authority to order restitution to the public. The authority for financial sanctions, including restitution, is contained in R.C. 2929.28. As outlined above, R.C. 2929.28 authorizes restitution to be made to the victim or survivors of the victim for economic loss, and to the government, but only for the cost of community control or certain forms of confinement. We find no authority in R.C. 2929.28 that would authorize a sentencing court to reimburse a Humane Society for the cost of care of animals seized under R.C. Chapter 959.
*1106 {¶ 55} Just as the Angus court found no authority in R.C. 2929.28 for the award of restitution in that case, based on our review of R.C. 2929.28, we find no authority in the statute that would have authorized the trial court in this instance to award restitution to the Mid-Ohio Food Bank, a non-victim. Thus, the trial court's award of restitution is a deviation from a legal rule. Notably, however, in sustaining Angus's challenge, the Angus court did not engage in a plain-error analysis. Angus is thus distinguishable from this case where Horton asserts the trial court's order of restitution constitutes plain error.
{¶ 56} Although Horton has shown that the trial court's award of restitution to the food bank in this instance is a deviation from a legal rule, it does not necessarily follow that the award of restitution to the food bank warrants a reversal. See Hill at 203, 749 N.E.2d 274 ("Reversal is warranted only if the outcome of the trial clearly would have been different absent the error"); Barnes at 27, 759 N.E.2d 1240 (whether an error affected the outcome of a trial constitutes a limitation on a reviewing court's decision to correct an error despite the absence of a timely objection at trial).
{¶ 57} Here, we find no evidence that the trial court's award of restitution to the Mid-Ohio Food Bank would have affected whether a guilty plea would have been entered in this case. First, in his petition to enter a guilty plea, Horton informed the trial court that "I am stipulating that, if the matter had gone to trial, the evidence would find me guilty beyond a reasonable doubt." Thus, Horton admitted his guilt based on the evidence presented against him, apart from any potential sentence that the trial court may have imposed. And in his petition to enter a guilty plea Horton informed the trial court that he understood that "the Court alone does sentencing and that any plea agreement as to sentencing is only a recommendation, and is not binding upon the Court." And, even if the parties had recommended an award of restitution to Horton's campaign fund as part of a recommended sentence, the trial court had no obligation to accept such a recommendation. See State v. Hayes , 10th Dist. Franklin No. 08AP-233, 2009-Ohio-1100, 2009 WL 638475, ¶ 26 ("a trial court is not restricted by a sentencing recommendation. * * * Therefore, even if trial counsel and the prosecutor could have agreed on a recommended sentence, the trial court was not required to accept that recommendation"). Because the trial court's award of restitution to the Mid-Ohio Food Bank would not have affected a decision whether to enter a guilty plea in this case, Horton has failed to satisfy his burden to show that the trial court's error affected the outcome of the case.
{¶ 58} Second, in this case the trial court could have imposed a fine of up to $3,000 as part of Horton's penalty. See R.C. 2929.28(A)(2)(a)(i) (authorizing a fine of "not more than one thousand dollars" for a misdemeanor of the first degree); Petition to Enter A Guilty Plea ("I understand that the maximum direct criminal penalty as to count 1, 2, 3 are as follows: * * * a fine of up to $1,000 as to each count"). At the sentencing hearing the trial court indicated an intention to impose a fine of $1,000-but it ultimately did not impose a thousand-dollar fine on Horton in its judgment of conviction. By Horton's own admission, he has paid $800 towards satisfying the restitution award of $2,065, thereby leaving a balance of $1,265.00 to be paid, which is almost the amount of the fine that the trial court indicated at sentencing that it intended to impose. In view of the fact that, in addition to any restitution award, Horton could have been fined $3,000-more than the entire amount of restitution ordered by the court-and that *1107 the trial court's intended fine of $1,000 was not made a part of the court's judgment of conviction-we do not find that a restitution award of $2,065 constitutes a manifest miscarriage of justice.
{¶ 59} Accordingly, we determine that the trial court's award of restitution to the Mid-Ohio Food Bank does not present this court with an exceptional circumstance that requires a finding of plain error to prevent a manifest miscarriage of justice. And, even if plain error could be established to exist on this record, we would decline to recognize it because, as discussed within, Horton has waived his right to appeal his sentence and Horton's sentence does not constitute an abuse of discretion. Thus, there is no manifest injustice to correct.
{¶ 60} Horton's second assignment of error is denied.
IV. Conclusion
{¶ 61} Having determined that Horton waived his right to appeal his sentence, that Horton's sentence is not an abuse of discretion, and that the trial court's imposition of restitution does not constitute plain error, and having denied Horton's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
McGRATH, BROGAN, and HANDWORK, JJ., concur.
McGRATH, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).
BROGAN, J., retired, of the Second Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).
HANDWORK, J., retired, of the Sixth Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).