[Cite as *State v. Robinson*, 2016-Ohio-4723.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   26710 |
| | : | |
| v. | : | T.C. NO. 14CR2303 |
| | : | |
| NOEL L. ROBINSON | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the ____30th____ day of _____June_____, 2016.

. . . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, 120 W. Second Street, Suite 706, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Noel L. Robinson was convicted of aggravated possession of drugs (methamphetamine) after a jury trial in the Montgomery County Court of Common Pleas.

She was sentenced to community control for a period not to exceed five years and her driver's license was suspended for six months.

{¶ 2} Robinson appeals from her conviction, claiming that her conviction was based on insufficient evidence and was against the manifest weight of the evidence and that her trial attorney rendered ineffective assistance. For the following reasons, the trial court's judgment will be affirmed.

## I. Factual and Procedural History

{¶ 3} The State's evidence at trial established the following facts.

{¶ 4} At approximately 11:00 p.m. on May 1, 2014, Riverside Police Officer Kyle Treon stopped Amber Davidson on U.S. Route 35 for a traffic violation. Robinson was the front seat passenger, and a male passenger was seated in the rear. Officer Treon asked for identification from the driver and the passengers. A check on their information revealed that Robinson and Davidson both had warrants for their arrests and that Davidson was driving under suspension. Davidson's warrant was "not in the radius of pickup," meaning that she could not be arrested on the warrant. However, Robinson was subject to arrest on her warrant.

{¶ 5} Officer Treon requested assistance from additional police officers so that Robinson could be secured and the warrant could be "confirmed" by the jurisdiction that issued it. Officers Darrin Anderson and Christine Krueger responded separately, and both parked behind Treon's cruiser. Officer Treon arrested Davidson for driving under suspension, patted her down for weapons for his safety, and walked her back to Officers Anderson and Krueger. Davidson was placed in Officer Treon's cruiser.

{¶ 6} Officer Treon returned to Davidson's vehicle to arrest Robinson on the

warrant. He took Robinson out of the vehicle, handcuffed her behind her back, and patted her down for weapons. Treon explained that he patted down Robinson using the outside of his hands, and he did not go into any pockets. His pat down included patting up and down Robinson's legs and checking her hands (Tr. 151), but Treon did not "feel every inch" as part of the patdown (Tr. 153). Officer Treon then walked Robinson back to Officers Anderson and Krueger.

{¶ 7} According to Officer Krueger, she conducted a search incident to Robinson's arrest, which she described as a more thorough search than a pat down for weapons. Nothing was found during this search.

{¶ 8} Officers Krueger and Anderson walked Robinson along the passenger side of the vehicles to Officer Anderson's cruiser. (Officer Krueger did not remember if it was parked immediately behind Officer Treon's cruiser or last in line.) Krueger stated that "[t]here was enough space for a person to walk and still be on asphalt. Then it tipped to * * * gravel and then there's a little bit of space and then there is enough space to walk where you have to scoot sideways between the car and the grass and enough space to walk straight ahead." (Tr. 160.)

{¶ 9} Krueger testified that Officer Anderson led, Robinson was in the middle, and she (Officer Krueger) was behind Robinson as they walked to the cruiser. Officer Krueger stated that the officers were looking at the ground as they were moving to make sure that Robinson, who was handcuffed, had a clear path and would not "fall in a hole or step in a bear trap or something." (Tr. 161.) Officer Krueger did not see Robinson make any odd movements as she walked. (Tr. 173.) Krueger stated that U.S. 35 had lights and was lit well enough to see. (Tr. 162.)

{¶ 10} The officers walked Robinson past the rear passenger door of Officer Anderson's cruiser, and Officer Krueger opened the cruiser's door to put Robinson inside. At that point, the officers "heard something fall. It sounded plasticky." The officers placed Robinson in the cruiser and noticed an object that had not been on the ground when the group had walked by originally. The officers immediately picked it up and examined it. (Tr. 160, 179.) The object was a small, black plastic case that was approximately 2-3 inches long by approximately an inch wide, with a magnet on it (Tr. 147); at trial, Officer Treon described the object as a "hide a key" case. The object contained baggies of suspected methamphetamine. When asked on cross-examination if she was the one who had picked up the object, Officer Krueger responded, "I don't recall if me or Officer Anderson picked up the item initially but we both heard it and we both remember speaking to each other." (Tr. 171.)

{¶ 11} Officer Anderson brought the black case to Officer Treon, who was working on paperwork, including citations and a tow slip for Davidson's vehicle.[1] Treon testified, without objection, that Anderson had told him that "he had discovered it [the black case] while they were securing Ms. Robinson in the vehicle." (Tr. 135.) Officer Treon opened the case. Based on his training and experience, Treon identified the substance inside as crystal methamphetamine. Officer Treon put the black plastic case in an envelope, took it back to the police department, and placed it in the evidence room.

{¶ 12} The envelope was submitted to the Miami Valley Regional Crime Lab for

---

[1] While Officers Anderson and Krueger were handling Robinson, Officer Treon returned to Davidson's vehicle to address the rear passenger, who was not under arrest. The rear passenger could not legally drive Davidson's vehicle, and he was advised that he could sit on the side of the road and call for a ride. Officer Treon planned to have Davidson's vehicle towed.

testing. The testing confirmed that the content of the baggies was methamphetamine, a Schedule II controlled substance.

{¶ 13} A jury trial was held in April 2015. The jury found Robinson guilty of aggravated possession of drugs and separately found that the drug involved was a substance included under Schedule II. The trial court sentenced Robinson to community control.

{¶ 14} Robinson appeals from her conviction, raising three assignments of error.

## II. Sufficiency and Manifest Weight of the Evidence

{¶ 15} Robinson's first and second assignments of error claim that her conviction was based on insufficient evidence and was against the manifest weight of the evidence.

{¶ 16} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 17} In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 (" 'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in

the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 18} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 19} R.C. 2925.11(A) prohibits a person from knowingly possessing drugs. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 20} " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "Possession of a drug may be either actual physical possession or constructive possession. A person has constructive possession of an item when he is

conscious of the presence of the object and able to exercise dominion and control over that item, even if it is not within his immediate physical possession." (Citations omitted.) *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18. "Establishment of ownership is not required." *State v. Rastbichler*, 2d Dist. Montgomery No. 25753, 2014-Ohio-628, ¶ 33. In determining whether an individual possessed drugs, it is necessary to consider all of the facts and circumstances surrounding the incident. *Mabry* at ¶ 20.

{¶ 21} Here, the State presented evidence that Robinson was arrested on an outstanding warrant and that Officer Krueger heard something made of plastic drop to the ground immediately before Robinson was placed in a cruiser. After Robinson was put in the cruiser, the officer saw the small, black plastic object, which was later determined to contain methamphetamine. The officer had been watching the ground while walking Robinson to the cruiser, and the officer did not see the container prior to hearing something drop. Construing the evidence in the light most favorable to the State, as we must when considering the sufficiency of the evidence, the State presented sufficient evidence that Robinson had knowingly possessed the drugs found in the small black container and that she discarded the container prior to her being placed in the cruiser.

{¶ 22} Robinson's first assignment of error is overruled.

{¶ 23} Robinson further asserts that her conviction was against the manifest weight of the evidence, because her hands were handcuffed behind her back, she had nothing in her hands when she was patted down, she made no unusual movements while she was taken from Davidson's car to the cruiser, and officers both patted her down and searched her without finding the black container. Robinson noted that the container was

like a "hide a key" case that could have been attached to a vehicle instead. At trial, defense counsel further argued that the container "could have been an item that could have been kicked on the ground because they [the officers] missed it. It was dark that evening. And, again, maybe they just don't recall seeing the item there." (Tr. at 228.)

{¶ 24} There is no question that the container with the drugs was found on the ground after the officers heard it drop. That is the total evidence against Robinson. As stated above, after viewing that evidence in a light most favorable to the prosecution, there was sufficient evidence from which the jury could have found that the container had been in Robinson's possession. However, in a manifest weight analysis, we must review the entire record, weigh the evidence, and sit as a "thirteenth juror."

{¶ 25} Upon review of the entire record, a majority of this Court concludes that the jury "lost its way" when it concluded, beyond a reasonable doubt, that Robinson possessed the plastic container prior to its being found by the officers. Robinson was handcuffed behind her back after being removed from Davidson's vehicle, and she was searched twice prior to being taken to Officer Anderson's cruiser. Officer Treon patted her down for weapons and Officer Krueger conducted a search incident to an arrest. Both Officer Treon and Officer Krueger testified that they checked Robinson's hands, and her hands were empty. Officer Krueger stated a search incident to an arrest would include checking around the person's waistband, patting down and going into pockets, and checking along the legs and, with women, breasts and vaginal area. Neither Officer Treon nor Officer Krueger found the "hide a key" plastic container.

{¶ 26} The State provided no evidence regarding what Robinson was wearing. Although there was testimony that "it [was] possible" that the container could have been

missed in a search (Tr. 163-64), that an additional search would be conducted at the jail, and that items are sometimes located at the jail that were not found during a prior search (Tr. 153), there was no evidence to suggest that Robinson's clothing was bulky and that a hard object, such as a hide-a-key case, could easily be missed.

{¶ 27} Robinson was handcuffed behind her back as she was led to Officer Anderson's cruiser, and Officer Krueger testified that she did not recall Robinson "making any odd movements" as she walked. (Tr. 172.) Robinson's hands were empty when she was led to the cruiser, and there was no evidence that Robinson made any movements to retrieve the "hide-a-key" container from her person prior to her being placed in the cruiser. Krueger was holding Robinson by the arm or forearm.

{¶ 28} Officer Krueger testified that the door to the cruiser was opened, "and then after a pause we heard the item drop." (Tr. 179.) The State asserts that the jury reasonably inferred that Robinson dropped the container on the ground after the cruiser door was opened. While this inference is permissible, with the evidence before us, there is little to support it. With her hands handcuffed behind her back, there was little that Robinson could do to retrieve the plastic container from her clothing without her movements being seen; Officer Krueger was holding onto Robinson's arms and did not see any odd movements. And, there is little evidence to support that Robinson had the container in her clothing when she reached the cruiser; it is unlikely that a hard plastic rectangular container, although not large, would be missed by two officers in separate searches, particularly a more thorough search incident to an arrest. Officer Krueger testified that the container was not tested for fingerprints.

{¶ 29} With the evidence at trial, it is just as probable, if not more so, that the "hide-

a-key" container fell from the cruiser when the cruiser door was opened. No evidence was offered about whether anyone had been in the back of the cruiser prior to the officer's responding to this traffic stop and whether the back of the cruiser had been checked to ensure that no contraband was present. Based on the evidence before us, a majority of this Court concludes that Robinson's conviction for aggravated possession of drugs was against the manifest weight of the evidence.

{¶ 30} Nevertheless, given that Robinson was convicted by a jury, we cannot reverse her conviction for aggravated possession of drugs. Section 3(B)(3), Article IV of the Ohio Constitution provides, in part, that "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." This Court is not unanimous regarding whether the manifest weight of the evidence supports or does not support Robinson's conviction. Accordingly, Robinson's conviction must stand.

{¶ 31} Robinson's second assignment of error is overruled.

### III. Ineffective Assistance of Counsel

{¶ 32} In her third assignment of error, Robinson claims that she was denied the effective assistance of counsel. Robinson argues that her trial attorney should have objected to Officer Krueger's testimony that both she and Officer Anderson heard an item drop prior to placing Robinson in the cruiser; Officer Anderson did not testify.

{¶ 33} To establish ineffective assistance of counsel, Robinson must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of her trial would have been different. *See Strickland v. Washington*,

466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052, 80 L.Ed.2d 674. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Rucker*, 2d Dist. Montgomery No. 24340, 2012-Ohio-4860, ¶ 58.

{¶ 34} Robinson claims that her trial counsel's performance was deficient, because Officer Krueger was allowed to testify about inadmissible hearsay and Officer Krueger's testimony about what Officer Anderson heard and said violated her right to confront all witnesses against her.

{¶ 35} Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement," as included in the definition of hearsay, is an oral or written assertion or nonverbal conduct of a person if that conduct is intended by him as an assertion. Evid.R. 801(A).

{¶ 36} Officer Krueger's testimony that Officer Anderson also heard something drop is not hearsay, because it does not contain a "statement" by Officer Anderson. Similarly, Krueger's testimony that "we both heard it and we both remember speaking to each other" does not meet the definition of hearsay. (Officer Krueger's testimony was arguably objectionable on the ground that she lacked personal knowledge of what Officer

Anderson heard and remembered, Evid.R. 602, but her testimony was not necessarily inadmissible and, in the absence of an objection, the State had no reason to provide a foundation demonstrating the admissibility of Officer Krueger's testimony.)

{¶ 37} Officer Krueger's testimony also did not violate Robinson's constitutional right to confront witnesses against her. "[T]he [United States] Supreme Court has recognized that a defendant's Sixth Amendment right to confront witnesses against him is violated when an out-of-court statement that is testimonial in nature is admitted into evidence without the defendant having had the opportunity to cross-examine the declarant." *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 26, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Officer Krueger's testimony that Officer Anderson also heard something drop is not testimony regarding an out-of-court testimonial statement by Officer Anderson.

{¶ 38} Regardless, even if counsel should have objected to Officer Krueger's testimony, Robinson has not demonstrated that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of her trial would have been different. Officer Krueger testified that she heard something drop that sounded "plasticky." Almost immediately afterward, she noticed the black "hide-a-key" container on the ground; Officer Krueger testified that both she and Officer Anderson examined the object. Officer Treon further testified, without objection, that Officer Anderson brought the container to him (Treon) and that Officer Anderson had stated that "he had discovered it while they [Officers Anderson and Krueger] were securing Ms. Robinson in the vehicle." (Tr. 135.) Officers Treon and Krueger's testimony, together, reasonably suggested that Officer Anderson had participated in the discovery of the small black container and that

he (Officer Anderson) believed the container was evidence related to Robinson's arrest.

{¶ 39} Robinson's third assignment of error is overruled.

## IV. Conclusion

{¶ 40} The trial court's judgment will be affirmed.

. . . . . . . . . . . .

DONOVAN, P.J., concurs.

WELBAUM, J., concurring:

{¶ 41} I concur with most of the majority opinion and affirmance, but very respectfully disagree with its conclusion that Robinson's Second Assignment of Error, but for a provision of the Ohio Constitution, should be otherwise sustained. I believe that Robinson's conviction was not against the manifest weight of the evidence. As noted by the majority, a split decision by a court of appeals reversing a conviction resulting from a jury trial on the manifest weight of the evidence is unconstitutional pursuant to Article IV, Section 3(B)(3), Ohio Constitution. *See State v. Hudson*, 2013-Ohio-2351, 993 N.E.2d 443, ¶ 58 (2d Dist.) (Welbaum, J., concurring), citing *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 39. (Other citation omitted.) Therefore, Robinson's conviction must be affirmed.

{¶ 42} Here, the State presented evidence that Robinson was arrested on an outstanding warrant and that Officer Krueger heard something made of plastic drop to the ground immediately before Robinson was placed in a cruiser. After Robinson was placed in the cruiser, the officer saw the small, black plastic object, which was later determined to contain methamphetamine. The officer had been watching the ground while walking Robinson to the cruiser, and did not see the container prior to hearing

something drop.

{¶ 43} Robinson asserts that her conviction was against the manifest weight of the evidence because her hands were handcuffed behind her back, she had nothing in her hands when she was patted down, she made no unusual movements while she was taken from Davidson's car to the cruiser, and officers both patted her down and searched her without finding the black container.   Robinson noted that the container was like a "hide a key" case that could have been attached to a vehicle instead.   At trial, defense counsel further argued that the container "could have been an item that could have been kicked on the ground because they [the officers] missed it.    It was dark that evening.   And, again, maybe they just don't recall seeing the item there."   (Tr. at p. 228.)

{¶ 44} Upon review of the record, there was evidence from which the jury could have reasonably concluded that Robinson did not possess the plastic container prior to its being found by the officers, as Robinson asserts.   Nevertheless, a conviction is not against the manifest weight of the evidence simply because the jury could have chosen to make different factual findings.   As stated in the majority opinion, the fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence.   In this case, the jury's conclusion that Robinson knowingly possessed drugs in violation of R.C. 2925.11(A), was also reasonable, and I cannot conclude that the jury "lost its way" in making this determination.

{¶ 45} I would overrule Robinson's Second Assignment of Error on its merits.   For these reasons I very respectfully disagree with the majority.   As a result of the reasoning expressed in this opinion, the Ohio Constitution requires that this conviction be affirmed.

Copies mailed to:

Kirsten A. Brandt
Robert Alan Brenner
Hon. Dennis J. Langer