[Cite as *State v. Jefferies*, 2019-Ohio-1469.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27942 |
| | : | |
| v. | : | Trial Court Case No. 2018-CRB-243 |
| | : | |
| TEVON L. JEFFERIES | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of April, 2019.

. . . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant City of Dayton Prosecutor, 335 West Third Street, Room 390, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

BENJAMIN W. ELLIS, Atty. Reg. No. 0092449, 805-H Patterson Road, Dayton, Ohio 45419
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the March 12, 2018 Notice of Appeal of

Tevon L. Jefferies. Jefferies appeals from his February 28, 2018 conviction in Dayton

Municipal Court, following a bench trial, on one count of sexual imposition, in violation of R.C. 2907.06(A)(1), a misdemeanor of the third degree.[1] The court sentenced Jefferies to 60 days in jail, all of which was suspended. He was ordered to complete two years of basic supervision, and he was designated a Tier I sex offender. The court ordered Jefferies to have no contact with the victim herein and to stay off the premises where the offense occurred. The court ordered Jefferies's sentence to be served consecutively with the sentence imposed in Dayton M.C. No. 2017 CRB 336. We affirm the judgment of the trial court.

{¶ 2} Jefferies was charged by complaint on January 17, 2018, and he pled not guilty on that date. On January 22, 2018, Jefferies filed a request for a competency and sanity evaluation and filed a plea of not guilty/not guilty by reason of insanity. On January 24, 2018, the court ordered competency and sanity evaluations. A status conference was held on February 15, 2018, and at that time the prosecutor indicated to the court that Jefferies had been evaluated and was found to be competent. The State offered to stipulate to the competency report, but the evaluation is not part of the record on appeal. The court found Jefferies to be competent and set the matter for trial.

{¶ 3} On February 20, 2018, at the start of trial, defense counsel moved the court to exclude evidence of Jefferies's prior 2017 conviction in Case No. 2017 CRB 336. In that case, Jefferies was convicted of telephone harassment, a misdemeanor of the first degree, involving the same victim, L.H. Defense counsel argued that Case No. 2017 CRB 336 was not relevant, that its probative value was substantially outweighed by its

---

[1] We note that Jefferies's judgment entry of conviction erroneously states that he entered a plea of guilty to the offense.

prejudicial effect, and that it was "remote in time." The State argued that Jefferies "sent sexual[ly] explicit pictures to the victim in this case and made sexual suggestions to her [in] the previous matter so I think it is relevant to show his intention * * * here." The court overruled defense counsel's motion.

{¶ 4} L.H. then testified that, on January 16, 2018, she encountered Jefferies in the stairway of her apartment building after she returned home from work. L.H. testified that she lived on the third floor of the building, and that Jefferies lived on the second floor of the same building. L.H. stated that Jefferies was "sitting on the stairs on the second floor going toward my apartment," and that he was "leaning against the wall away from the railing."

{¶ 5} The following exchange occurred:

Q. And as you went by that railing what happened with Mr. Jefferies?

A. He basically leaned over and touched my lower bottom of my behind as I was going up the stairs.

Q. OK and you said he touched your lower part of your behind. Do you mean your personal area or your bottom?

A. Yes ma'am.

Q. And what portion of your bottom did you [sic] touch?

A. Basically the middle of my behind.

Q. And how did he touch your behind?

A. By running his finger acrossed [sic] it.

Q. And did he run his finger across your entire bottom?

A. Yes ma'am.

Q. And how did it make you feel when he did that?

A. Awkward, weird, uncomfortable.

Q. And did you say anything to him at that time?

A. I looked at him and I go, are you serious?

Q. Did he say anything to you?

A. Nothing.

* * *

Q. Can you tell me a little bit of how you were situated?

A. Well when you go up the stairs you have to go around the relm [sic] so you have to basically turn your body at an angle going up the stairs instead of just straight.

* * *

Q. And so was your bottom facing towards the railing or away from the railing at this time?

A. Away from the railing. It was towards him.

Q. And is there any railing on the other side of the stairwell?

A. No.

Q. And so the only thing that could have touched your bottom was him?

A. Yes ma'am.

**{¶ 6}** L.H. testified that she called her girlfriend, telling her that she (L.H.) had been "assaulted" and could not get into her apartment. L.H. told her friend that she (L.H.)

would be at a neighbor's house until the friend arrived, because she did not "want to go upstairs at all" until the friend got there and did not feel comfortable. L.H. testified that, when her girlfriend arrived, L.H. told her to call the police "because he touched me" and because L.H. was "too scared and nervous" to do it. L.H.'s girlfriend walked L.H. up to the third floor apartment. L.H. testified that Jefferies remained in the same location on the stairs at that time; L.H. did not speak to Jefferies, but Jefferies claimed not to have touched L.H., called her "crazy," and said "all kind of awkward stuff" as the women went up the stairs. When L.H. was asked to define "awkward stuff," she responded, "[l]ike basically you are a liar and whores." L.H. testified that police officers arrived, and that she was "nervous and shaking." She stated that after speaking to an officer about the incident, he left to speak to Jefferies, and she closed the door to her apartment. L.H. denied that Jefferies's conduct could have been accidental, "[b]ecause he wasn't standing up or anything. He was sitting down so his hands should have been toward his body." According to L.H., Jefferies "had to basically lean over to touch me."

{¶ 7} A.G., L.H.'s girlfriend, testified that she received a phone call from L.H. on January 16, 2018, and that L.H. was "loud" in the course of the phone call, which "means she's angry." A.G. testified that L.H. told her that Jefferies had touched her; he "rubbed his finger under her butt when she was going up the stairs." A.G. testified that when she arrived at L.H.'s residence, L.H. was downstairs at a neighbor's apartment and, as the women proceeded up the stairs, Jefferies "was sitting in the hallway on the stairs." A.G. "told him to keep his F'N hands off of her."

{¶ 8} Dayton Police Officer Angela Woody testified that, on January 16, 2018, she and her partner, Officer Zachary Fehrman, were dispatched to L.H.'s apartment on a

sexual assault complaint. She stated that they entered the building through the front door and immediately heard a male's voice "yelling or talking loudly"; as the officers went up the stairs, they saw Jefferies "seated on the top of the stairs and kind of on the platform between the second and third level." Woody stated that, when they got to the platform on the second level, they "could distinctly hear him chanting squeeze or a grope – and I apologize for my language – a squeeze or a g** d*** grope." When asked how many times he chanted, Woody responded, "[i]t was kind of a continuous chant while we were there."

{¶ 9} Woody stated that she approached Jefferies while Fehrman proceeded to L.H.'s apartment. Woody did not say anything to Jefferies about the officers' purpose in being there. She stated that she "just stood with him until we had further information to determine if we had a crime or not." Woody testified that Jefferies continued his chanting "and then kind of out of the blue he said I need a g** d*** cigarette and he got up and ran down the stairs to apartment C," leaving the door open. Officer Fehrman joined Woody and informed her that they would be arresting Jefferies, so the officers "called him out" of the apartment and Woody handcuffed him.

{¶ 10} As Woody and Fehrman walked Jefferies in their cruiser, he "continued to make the same chant." They informed Jefferies that he was under arrest for sexual imposition. Woody stated that she tried to read Jefferies his *Miranda* warnings, but he did not acknowledge that he understood them so, so she did not ask him any questions at that time; they just sat in the cruiser together and Jefferies "continued to talk and he continued to chant the squeeze and a g** d*** grope." According to Woody, Jefferies "referred a lot to [L.H.] being a bad b****." Jefferies asked Woody if she (L.H.) "fe[lt] all

of [his] fingers or my palm," but Woody did not engage in conversation with him about it. On cross-examination, Woody testified that, while in the cruiser, Jefferies stated that L.H. likely struck the railing as she walked by him on the stairs; Jefferies did not admit to purposely touching L.H.

{¶ 11} Officer Fehrman testified that he responded to L.H.'s apartment building with Woody on January 16, 2018, and that they heard "a male voice, agitated" when they entered the building.   He stated that Jefferies was "sitting on the stairs and he was kind of leaning against the wall and just kind of angrily muttering about squeezing and groping * * *."   Fehrman proceeded past Jefferies to L.H.'s apartment, where it "was obvious that she was upset."   Fehrman testified that L.H. "said that she had gone upstairs and that the Defendant had touched her buttox [sic] as she passed him on the stairway." According to Fehrman, L.H. "demonstrated by – she was standing and she took her finger and ran it across her buttox [sic] and said that he had touched her like that."   Fehrman testified that he then heard "some kind of commotion," so her went back out to his partner, and they secured Jefferies and put him in the cruiser.   Fehrman then went back to continue his conversation with L.H.   Fehrman stated that, when they secured Jefferies, he was "more agitated and he kept saying the difference between a squeeze and a g** d*** grope."

{¶ 12} On cross examination, Fehrman testified that he was aware that Jefferies had made a statement about the railing in the stairway, but Fehrman did not recall if he heard it directly from Jefferies or if he heard it second-hand from Woody.   When asked if Jefferies ever admitted to touching L.H., Fehrman responded, "[n]o he just continued with the squeeze and the grope."   He acknowledged that he would not characterize

L.H.'s demonstration of Jefferies's touching her as a either a "squeeze" or a "grope."

{¶ 13} At the conclusion of the State's evidence, defense counsel moved for a judgment of acquittal. Counsel asserted that the State had failed to present sufficient corroborating evidence, which was required under the statute in order for a conviction of sexual imposition. Additionally, counsel argued that the State had failed to present evidence establishing an essential element of the offense, "that being sexual contact." The court overruled the motion. The defense did not call any witnesses, and the trial court found Jefferies guilty as charged.

{¶ 14} Jefferies was sentenced on February 28, 2018. After imposing the sentence set forth above in Dayton M.C. No. 18 CRB 243, the court also imposed sentence in Case N. 17 CRB 336, as follows:

And Mr. Jefferies on Case Number 17 CRB 336, the court is going to terminate for unsuccessful termination of Access 2 and we are going to impose the sentence. You are going to be sentenced to a 180 days and I'm gonna give you 180 days will be suspended with 49 days credit for time served. I'm gonna place you on supervised probation for a period not to exceed two years. * * * Special instructions you should comply with medical health treatment at Eastway undergo a psycho sexual evaluation with a certified offender treatment specialist and comply with the expectations of a sexual oriented supervision. The sentences on 17 CRB 336 and the sentence of 18 CRB 243 those sentences shall run consecutive to each other * * *.

{¶ 15} Jefferies raises three assignments of error on appeal. We will consider his

first two assignments of error together.   They are as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION BECAUSE THE STATE PRESENTED INSUFFICIENT EVIDENCE OF SEXUAL CONTACT.

APPELLANT'S CONVICTION WAS ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16}   Jefferies asserts in his first assignment of error that the evidence was not sufficiently probative of his mental state.   Jefferies asserts that A.G.'s testimony regarding L.H.'s excited state was "probative of the state of mind of [L.H.]," but not of his own state of mind.   He asserts that it was also "unclear from the record exactly how [L.H.] observed [Jefferies's] movement with her back necessarily to him."   He argues that demonstrating the mens rea for sexual contact requires more than evidence of mere movement, because R.C. 2907.01(B) does not impose strict liability; evidence of a "specific culpable state" was required.

{¶ 17} According to Jefferies, the testimony provided by Officers Woody and Fehrman was probative of his state of mind, but what it described was "so bizarre that it indicate[d] confusion and unsound mind."   Jefferies points out that he "chanted 'squeeze or a grope' almost uninterrupted during the entire time the officers were present," and that Officer Woody "could not even successfully Mirandize" him because of the chanting. Jefferies asserts that the chanting of "squeeze or a grope" did not "correspond with what [he] was accused of – dragging his finger over [L.H.'s] buttocks," and the absence of evasiveness or an attempt to hide on his part did not indicate "a guilty conscience or the presence of mens rea itself."   Jefferies asserts that his statements in the police cruiser

were "similarly bewildered, at one point stating [L.H.] must have 'brushed the railing' and mistaken it for him, before later apparently stating '…did she feel all of my fingers or my palm[?]' "

{¶ 18} Jefferies argues that the circumstantial evidence in this case differed from the types of evidence from which an inference of sexual gratification and knowledge of offensiveness is typically inferred, such as "a defendant's evasiveness, deceit, secrecy, sexual excitement, and even lurid statements." Jefferies notes that his motion to exclude evidence of his prior telephone harassment conviction was overruled, but that the State did not "in fact us[e] the prior charge as evidence of motive or intent, despite it being permitted." Jefferies argues that the circumstantial evidence in this case was such that it was "impossible for a finder of fact to draw reasonable inferences regarding [his] state of mind without ignoring reasonable doubt."

{¶ 19} In his second assignment of error, Jefferies argues that it was "not only possible, but probable that [he] was seated in the stairwell, attempted to stand or make way for [L.H.], and accidentally touched her with no sexual intent whatsoever. Then, after being accused of sexual assault, [he] became understandably bewildered and angry." Jefferies argues that "the testimony regarding the physical contact itself initially raise[d] such a competing inference," and that his "confused behavior" after the contact "redouble[d]" the inference. According to Jefferies, L.H.'s testimony described that he had moved toward her and she felt "something drag across her buttocks. * * * The force was never described as great or penetrating, rather as a lighter touch"; the testimony of Woody and Fehrman portrayed Jefferies "as behaving erratically, in a confused and strange fashion: chanting strangely, becoming angry, swearing, insisting the incident was

an accident, running to his apartment while leaving the door completely open, then coming out." Finally, Jefferies asserts:

The inference that Appellant moved and accidentally touched Harris in a confined area, then became panicked and angry when falsely accused of sexual assault outweigh[ed] the competing inference that Appellant somehow maneuvered behind Harris, yet within her field of view, to touch her buttocks before revealing his sexual intent by remaining on-scene and rambling incoherently about groping, cigarettes and hand-rails for the better part of an hour.

{¶ 20} The State responds that Jefferies claims only that the element of his "mental state in touching [L.H.'s] buttock" was insufficient. However, it points out that the parties had no history of voluntary sexual contact between them, and therefore Jefferies had "no reason to believe the touching would be welcome. Quite the opposite, [Jefferies] had been previously convicted of harassing [L.H.]." According to the State, Jefferies repeated statements about a "squeeze or a grope" to the police officers supported an inference that his intention was to squeeze or grope L.H. The State also argues that the words "squeeze" and "grope" "clearly carry sexual connotations." Jefferies subsequent question to Officer Woody about whether L.H. had felt "all of [his] fingers or [his] palm" was also suggestive of sexual intention. Finally, Jefferies "had to make an effort to reach over and make contact with [L.H.]" According to the State, these behaviors made it clear that the contact was not accidental in nature and provided evidence of Jefferies's intention to sexually gratify himself by touching L.H., and that there was no other reasonable explanation for his touching.

**{¶ 21}** As this Court has previously noted:

Crim.R. 29(A) states that a court shall order an entry of judgment of acquittal if the evidence is insufficient to sustain a conviction for the charged offense. "Reviewing the denial of a Crim.R. 29 motion therefore requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Witcher,* Lucas App. No. L-06-1039, 2007-Ohio-3960.

"In reviewing a claim of insufficient evidence, '[t]he relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' (Internal citations omitted)." *State v. Crowley,* Clark App. No. 2007 CA 99, 2008-Ohio-4636.

*State v. Jackson*, 2d Dist. Montgomery No. 23368, 2010-Ohio-2137, ¶ 9-10.

**{¶ 22}**  This Court has further noted:

In contrast, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson*[, 2d Dist. Montgomery No. 22581, 2009-Ohio-525,] at ¶ 12. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences,

consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." [*State v.*] *Thompkins*, 78 Ohio St.3d [380,] 387, 678 N.E.2d 541, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

*State v. Robinson*, 2d Dist. Montgomery No. 26710, 2016-Ohio-4723, ¶ 17-18.

**{¶ 23}** R.C. 2907.06 provides:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1) The offender knows that the sexual contact is offensive to the

other person, or one of the other persons, or is reckless in that regard.

* * *

(B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence.

{¶ 24} Sexual contact "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). A person acts "knowingly" when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). A person acts recklessly when, with heedless indifference to the consequences, he disregards a substantial and unjustifiable risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C).

{¶ 25} As this Court noted in *State v. Clark*, 2d Dist. Clark No. 2013 CA 52, 2014-Ohio-855, ¶ 12, 15-16:

* * * The Ohio Revised Code does not define "sexual arousal" or "sexual gratification." *State v. Gesell,* 12th Dist. Butler No. CA2005-08-367, 2006-Ohio-3621, ¶ 23. However, "R.C. 2907.01(B) 'contemplate[s] any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying.' " *State v. Astley,* 36 Ohio App.3d 247, 250, 523 N.E.2d 322 (10th Dist.1987). In addition, "[w]hile the purpose of sexual arousal or gratification is an essential element of the offense of * * * sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification." *Gesell,* at ¶ 25. " '[T]he proper

method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision, the trier of fact may consider the type, nature, and circumstances of the contact, along with the personality of the defendant. From these facts, the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved.' " *State v. Mundy,* 99 Ohio App.3d 275, 288-289, 650 N.E.2d 502, 510 (2d Dist.1994), quoting *State v. Cobb,* 81 Ohio App.3d 179, 185, 610 N.E.2d 1009, 1013 (9th Dist.1991).

* * *

The Supreme Court of Ohio has addressed the corroboration requirement set forth in R.C. 2907.06(B) in *State v. Economo,* 76 Ohio St.3d 56, 666 N.E.2d 225 (1996). "Although one can make a reasoned argument that the corroboration required by the statute ought to touch upon the knowledge-that-ones-conduct-is-offensive element of Sexual Imposition, that argument was clearly rejected in *Economo.* The opinion in that case clearly holds that corroboration, which can be slight, need only touch upon any element of Sexual Imposition." *State v. Rossi,* 2d Dist. Montgomery No. 22803, 2009-Ohio-1963, ¶ 37.

In *Economo,* the only evidence corroborating any element of the offense was that the alleged victim promptly reported the incident to the authorities, appeared to be upset, and did not want to be alone with the alleged perpetrator of the offense. These circumstances were deemed to constitute sufficient corroboration.

**{¶ 26}** We initially note that the municipal court clearly credited L.H.'s testimony that Jefferies engaged in sexual contact with her, knowing the contact was offensive or being reckless in that regard, and we defer to the municipal court's assessment of credibility.   While L.H. testified initially that "when I went back *down* the steps that's when I got assaulted," and subsequently that Jefferies "basically leaned over and touched my lower bottom of my behind as I was going *up* the stairs," she testified consistently that Jefferies ran his finger across her buttocks area, by definition an erogenous zone, as she passed him in the stairway. L.H. testified that, in order to touch her, since he was seated, Jefferies had to deliberately "lean over to touch me."    She stated the contact made her feel "[a]wkward, weird, uncomfortable."   She stated that she called A.G. and told her that she did not want to go upstairs alone, and that she would wait at her neighbor's apartment for her to arrive.   L.H. testified that she told A.G. to call the police, and that she did not return to the third floor apartment until A.G. arrived and walked there with her.   She stated that she was "nervous and shaking" when the officers arrived.

**{¶ 27}** A.G. testified that L.H. told her on the phone that Jefferies "rubbed his finger under her butt," and that L.H. was angry in the course of the phone call.   Fehrman testified that L.H. told him that Jefferies touched her buttocks as she passed him on the stairs, and that it was obvious that L.H. was upset. Fehrman testified that L.H.

demonstrated how the contact occurred by running her finger across her buttocks. We conclude that the circumstances herein constitute sufficient corroboration.

{¶ 28} As noted in *Clark*, 2d Dist. Clark No. 2013 CA 52, 2014-Ohio-855, ¶ 12, there is no requirement for direct testimony regarding sexual arousal or gratification. Jefferies's repetitive chant, "a squeeze or a grope," was indicative of Jefferies's motivation for touching L.H., as was Jefferies's asking Woody if L.H. felt "all of my fingers or my palm." Considering the type, nature, and circumstances of the contact along with Jefferies's conduct and comments immediately thereafter, we conclude that the trial court could have reasonably inferred that Jefferies's purpose in touching L.H. was sexual arousal or gratification. Having reviewed the entire record, we conclude that the trial court reasonably concluded that Jefferies also knew that the sexual contact was offensive to L.H., or that he was reckless in that regard. In other words, we conclude that Jefferies's conviction for sexual imposition was supported by sufficient evidence and was not against the manifest weight of the evidence. For the foregoing reasons, Jefferies's first and second assignments of error are overruled.

{¶ 29} Jefferies's third assignment of error is as follows:

APPELLANT WAS ERRONEOUSLY SENTENCED TO CONSECUTIVE SENTENCES FOR TWO MISDEMEANOR OFFENSES AND FOR THE MAXIMUM SENTENCE.

{¶ 30} According to Jefferies, the "trial court conducted no discussion of course of conduct, 'greatness of harm' or why consecutive sentences would be necessary to protect the public according to R.C. 2929.14(C)." He asserts that his sentence was arbitrary, unreasonable and unconscionable.

{¶ 31} The State responds that the trial court properly considered that Jefferies committed the offense in this case while on probation in Dayton M.C. No. 17CRB336, and the victim in the Dayton M.C. No. 17CRB336 case was the same victim as in this case. Jefferies also had not been compliant, despite the intensive nature of his probation in Case No. 17CRB336, and was being revoked from that probation as a result. According to the State, the continuing nature of Jefferies's harassment of L.H. clearly pointed to the "need to run the sentences consecutively."

{¶ 32} "An appellate court 'review[s] a misdemeanor sentence[ ] for an abuse of discretion.' " *State v. Lawson*, 2d Dist. Champaign No. 2017-CA-8, 2018-Ohio-1532, ¶ 11, quoting *State v. Fankle*, 2015-Ohio-1581, 31 N.E.3d 1290, ¶ 18 (2d Dist.); *see also State v. Horton*, 2017-Ohio-8549, 99 N.E.3d 1090, ¶ 36 (10th Dist.). "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable; most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *State v. Peagler*, 2d Dist. Montgomery No. 24426, 2012-Ohio-737, ¶ 3. A decision is unreasonable if there is no sound reasoning process that would support that decision; it is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *Id.*, citing *AAAA Ents., Inc. v. River Place Community Redevelopment,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 33} As we held in *State v. Grove,* 2d Dist. Montgomery No. 24037, 2010-Ohio-6101:

"A trial court that imposes a sentence for a misdemeanor has

discretion to determine the most effective way to achieve the purposes and principles of misdemeanor sentencing, which are to protect the public from future crime by an offender and to punish the offender. R.C. 2929.21(A) and 2929.22(A). The court may impose any available sanction or combination of sanctions. R.C. 2929.22(A). In imposing a sentence for a misdemeanor, the trial court must consider the factors set out in R.C. 2929.22(B)(1)(a) through (e), and the failure to do so constitutes an abuse of discretion. R.C. 2929.22(B)(1); *State v. Wagner* (1992), 80 Ohio App.3d 88 * * *. If the sentence imposed is within permissible statutory limits, a reviewing court will presume that the trial court considered the sentencing factors in R.C. 2929.22(B), absent a showing to the contrary."

*Id.* at ¶ 61, quoting *State v. Johnson,* Greene App. No. 04-CA-126, 2005-Ohio-6826, ¶ 9.

**{¶ 34}** R.C. 2929.14(B)(1) provides: "A jail term or sentence of imprisonment for a misdemeanor shall be served consecutively to any other prison term, jail term or sentence of imprisonment when the trial court specifies that it is to be served consecutively * * *." R.C. 2929.14(C), to which Jefferies directs our attention, authorizes the court to impose consecutive *prison terms* for felony offenses, and it does not apply herein. In other words, the municipal court was not required to make the R.C. 2929.14(C)(4) findings prior to ordering consecutive terms. An abuse of discretion is not demonstrated.

**{¶ 35}** Jefferies's second assignment of error is overruled.

**{¶ 36}** The judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Amy B. Musto
Benjamin W. Ellis
Hon. Carl S. Henderson